NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the matter of | : | Case No. 04-49188/JHW |
| Clarence Alfred Reath, a/k/a  Al Reath | : | |
| | : | |
| Debtor. | | |
| _____ | : | |
| Jill Cochran t/a Cochran & Company, | : | Adv. No. 06-1531 |
| Plaintiff | | |
| v. | : | |
| Clarence Alfred Reath, a/k/a  Al Reath | : | **OPINION ON MOTION FOR RULE 9011 SANCTIONS** |
| | : | |
| Defendant. | | |
| _____ | : | |

APPEARANCES:    Jeffrey B. Saper, Esq.
                180 Tuckerton Road, Suite 19
                Medford, New Jersey  08055
                Counsel for Plaintiff

                Debra L. Sherlock, Esq.
                Reger, Rizzo, Kavulich & Darnall, LLP
                Parkview Tower, Suite 250
                1150 First Avenue
                King of Prussia, PA 19406
                Counsel for Defendant

**FILED**

JAMES J. WALDRON, CLERK

December 6, 2006

U.S. BANKRUPTCY COURT
CAMDEN, N.J.

BY: Terry O'Brien, Judicial
Assistant to Chief Judge Wizmur

Before the court is the debtor's motion for sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure.  Because the Rule 9011 "safe harbor" provisions have not been complied with, relief may not be afforded on

that basis.  However, the court will consider the imposition of sanctions against

the plaintiff under the inherent authority of the federal courts to do so where bad

faith litigation has been prosecuted, and will afford the plaintiff the opportunity to

respond before the decision is rendered on the motion.


## FACTS AND PROCEDURAL HISTORY


This is the second adversary proceeding involving these two parties in this

case.  The debtor defendant, Clarence Alfred Reath, served as an independent

contractor for the plaintiff, Jill Cochran, the sole proprietor of Cochran &

Company (hereinafter "the Company"), a business which represents

manufacturers and importers in the gift industry who sell their products to

retailers.  Reath and his daughter, Yvonne Glauner, worked as a team, servicing

the South Jersey region for the plaintiff.  Reath lived with his daughter, worked in

her gift shop, drove her to sales meetings, trade shows and to retailers, assisted

her in transporting and securing samples from manufacturers, and assisted her

in filling out and processing retailers' orders.  He later became a sales manager

with the Company in 2002.  By letter dated November 16, 2003, Reath officially

resigned from the Company.


On December 15, 2004, Reath filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code, listing the plaintiff as an unsecured creditor with a pending lawsuit and an unknown claim amount. The plaintiff was noticed of the filing through her attorney, Bruce L. Baldwin, Esquire. Following the first meeting of creditors, the Chapter 7 trustee filed a No Asset Report and Notice of Information for Abandonment of the debtor's interest in property located at 1365 Route 47, Woodbine, New Jersey. The plaintiff was again noticed of the Notice of Abandonment through her attorney. A Certification of No Objection to the abandonment was filed on March 9, 2005. The debtor received his discharge on March 24, 2005.

On March 21, 2005, the last day to object to the dischargeability of a debt, the plaintiff herein, Jill Cochran t/a Cochran & Company, represented by counsel John Palitto, Esquire, filed her first adversary complaint against the debtor, seeking a determination of nondischargeability pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6). Following a trial on October 18 and 19, 2005, by opinion dated April 27, 2006, judgment was entered in favor of the debtor. It was determined that the debtor's unliquidated debt to the plaintiff, if any, may be discharged, and was discharged by the court's Discharge Order of March 24, 2005. The plaintiff's complaint was dismissed in its entirety.

Nearly one year after the debtor received his discharge, on March 20, 2006,

the plaintiff, this time with different counsel, filed this second adversary

proceeding seeking to revoke the debtor's discharge pursuant to 11 U.S.C. §

727(d)(1).[1]  The plaintiff alleges that the debtor had obtained his discharge

through fraud by under-reporting the value of his assets, under-reporting his

income, and misusing the bankruptcy process in what was basically a one

creditor dispute.  On May 30, 2006, the debtor moved to dismiss the plaintiff's

complaint.  Three hearings were held in this matter:  on June 26, 2006, July 28,

2006 and September 6, 2006.

On June 26, 2006, Count Three of the complaint, which alleged that the

bankruptcy petition was filed in bad faith because it was filed primarily to

eliminate the debt owed to the plaintiff, was dismissed.  The make-up of the

creditor body was delineated in the bankruptcy petition filed by the debtor in

December 2004.  There was no basis to sustain a Section 727(d) revocation of

discharge on that ground.   Section 727(d)(1) requires a demonstration that the

---

[1]      Section 727(d)(1) provides that:

On the request of the trustee, a creditor, or the United States
trustee, and after notice and a hearing, the court shall revoke a
discharge granted under subsection (a) of this section if -- such
discharge was obtained through the fraud of the debtor, and the
requesting party did not know of such fraud until after the
granting of such discharge.

11 U.S.C. § 727(d)(1).

debtor's discharge was obtained by fraud, and that the requesting party did not

know of such fraud until after the granting of the discharge.  Neither of these

showings could be made by the plaintiff in Count Three of the complaint.

With respect to Counts One and Two, the court afforded the plaintiff an

additional opportunity, until July 6, 2006, to amend her complaint to

affirmatively assert her level of knowledge regarding the facts.  In Count One, the

plaintiff sought to revoke the debtor's discharge on the ground that the debtor

grossly undervalued his residence on the petition, and misstated the ownership of

the property.[2]  In Count Two, the plaintiff alleged fraudulent understatement of

the debtor's income, generated from working with his daughter, and the "imputed

fair rental value of the commercial buildings" on the debtor's property.  Neither

Count One nor Count Two addressed the requisite Section 727(d) element that

the plaintiff did not know of the alleged fraud until after the debtor's discharge

was granted.  On July 16, 2006, ten days after the deadline to file an amended

complaint, the plaintiff filed her amended complaint, asserting that:  (1) she was

---

[2]    The plaintiff alleges in paragraph 3 of the complaint that "the property was purchased by Defendant, Jeannette C. Reath, and David Gluane, as joint tenants with right of survivorship (not as "tenants in common", as indicated by Defendant on Schedule A of his Chapter 7 petition) on August 15, 1981, for $52,000.00."  Jeanette C. Reath is not named as a defendant in the complaint.  There is no explanation, either in the complaint or in the plaintiff's responses to the debtor's motion to dismiss, of the alleged fraud in the description of the nature of the ownership in the property.

never advised of her rights as a creditor by her previous attorney; (2) she did not

know prior to the entry of the debtor's discharge of any fraud or

misrepresentations in the debtor's schedules; (3) she was not advised by her

bankruptcy counsel, John Palitto, Esquire, that she should investigate the facts

alleged in the petition to determine a basis for a challenge to the debtor's

discharge, and (4) she did not learn of the alleged fraud or misrepresentations

until her new counsel, Jeffrey Saper, Esquire, conducted a "review and

investigation" in early 2006 to conclude that cause existed to seek a revocation of

the debtor's discharge.  The debtor moved to dismiss the amended complaint on

July 25, 2006.

On July 28, 2006, Count One of the amended complaint was dismissed.

The plaintiff's assertion that she did not know about the debtor's gross

undervaluation of his residence until her new counsel reviewed the matter in

early 2006 was rejected, because she was charged with the public knowledge of

the information contained within the debtor's bankruptcy petition and the

information contained in the trustee's Notice of Proposed Abandonment.  She was

bound by her failure, and the failure of her attorney at the time, to object to the

abandonment.  As to Count Two of the amended complaint, the debtor's motion

to dismiss was converted to a motion for summary judgment.  The plaintiff was

afforded additional time to submit a factual basis for her remaining allegations in

Count Two regarding the debtor's unreported income at the time he filed his

bankruptcy petition in December 2004.

On September 6, 2006, the debtor's motion for summary judgment on

Count Two was granted, and the amended complaint was dismissed.  In Count

Two of the debtor's amended complaint, the plaintiff claimed that the debtor

testified at the hearing on Adversary Proceeding No. 05-1493 that he was not

retired at the time of the filing of the petition, but was in fact working with his

step-daughter, as well as by himself.  Secondly, the plaintiff contended that the

debtor failed to assert income in the form of a portion of the "imputed fair rental

value of the commercial buildings" on the property of which he was a one-third

owner.  Third, the plaintiff asserts that the debtor failed to mention any business

interest on his schedules and statement of financial affairs, notwithstanding the

fact that he was an independent contractor and was also in business with his

stepdaughter.  Fourth, the plaintiff challenged the debtor's listing of his 2002

income from employment ($14,239) and his 2003 income from employment

($13,680) on the basis that "it can be reasonably argued that these figures

represent a significant understatement of defendant's earnings for those years",

based on the testimony given by defendant in the adversary proceeding.

In response to the direction that a factual basis for the plaintiff's allegation

-7-

in Count Two regarding the debtor's unreported income be submitted, Mr. Saper,

on behalf of the debtor, submitted the following documentation:

1. The debtor's letter of resignation from the plaintiff's company dated November 16, 2003, in which he acknowledges that he was "less than truthful as to disclosures regarding the plaintiff's employees." This letter was considered in the context of the Adversary Proceeding No. 05-1493 (see Opinion dated April 27, 2006) and contains no information about the level of the debtor's compensation at any time.

2. A listing of the debtor, as well as Yvonne Glauner and two other sales representatives of the plaintiff, in a trade publication printed in November 2003 for the January 2004 Philadelphia Gift Show, designating the debtor and the others as employees of the plaintiff's competitor, Pamela J's.  In my written opinion on Adversary Proceeding No. 05-1493, I determined that the debtor testified credibly that he never worked for Pamela J's, and that he did not know why he was listed in the publication.  No information about the debtor's level of compensation from this alleged employer was submitted by the plaintiff, either during the trial of the first complaint, or in the context of this adversary proceeding.

3. The debtor's 1099 forms for 2003, reflecting compensation received of $5,707.36 and $615.  These numbers are within the income numbers reflected by the debtor in his Statement of Financial Affairs.

4. The 1099 form of Yvonne Glauner for 2003, reflecting an income of $24,964.96.  The plaintiff claims that, at the request of the debtor, all commission compensation earned by the debtor was paid to Ms. Glauner.

5. The records of the plaintiff's company, Cochran & Company, reflecting that in 2002, the debtor was paid $5,469.37, and the debtor's stepdaughter, Yvonne Glauner, was paid $64,383.93 in commissions.

On the debtor's motion for summary judgment, the plaintiff's allegation in

Count Two that the debtor committed fraud in reporting his 2002, 2003 and 2004 income on his schedules and Statement of Financial Affairs, and that the plaintiff did not know of such fraud until after the granting of the discharge, was rejected.    All of the information supplied by Mr. Saper to establish a factual foundation in support of plaintiff's allegations came directly from the plaintiff's business records, with the exception of the trade publication printed in November 2003.  The plaintiff knew of the trade publication by January 2004, nearly a year before the debtor filed his bankruptcy petition.   If the debtor's reporting of past and present income was believed by the plaintiff to have been fraudulent, she was obliged to present that information to the court before the debtor's discharge was issued.  Her inaction is not excused by her allegation that her attorney may not have advised her properly about the contents of the debtor's schedules, or her potential course of action.  The United States Supreme Court has held that clients must be held accountable for the acts and omissions of their attorneys. Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 397, 113 S. Ct. 1489 (1993).  I granted the debtor's motion for summary judgment on Count Two of the complaint.

At the conclusion of the hearing on the debtor's summary judgment motion, the debtor's counsel suggested that sanctions were warranted in this case.  I responded as follows:

> Rule 9011 requires a specialized, a very specific regimen, a procedure
> that requires the movant to seek to have the pleading withdrawn
> within a specified time and if it's not withdrawn then a separate
> motion can be made.  I don't know if you're making your application
> under 9011 or whether it is a generalized sanction motion under
> perhaps Section 105 or the inherent opportunity of the court to
> sanction.

I commented further that "I do have concerns about her [the plaintiff's] motive,

her bases, her continuous pursuit of these causes even where there may not be

grounds for them."  The debtor was given additional time to file a separate motion

for sanctions.

Two weeks later, on September 20, 2006, the debtor filed his motion for

sanctions pursuant to Fed.R.Bank.P. 9011 and Fed.R.Civ.P. 11 "for filing the

Complaint solely to harass Reath and to cause unnecessary expenses and

additional fees incurred in defense of the instant matter."

**<u>DISCUSSION</u>**

Rule 9011 of the Federal Rules of Bankruptcy Procedure provides a

mechanism to sanction attorneys and parties for presenting pleadings to the

court for an improper purpose, such as to harass, cause unnecessary delay, or

needlessly increase the cost of litigation, and for failing to investigate the facts

and law regarding an action before filing it with the court.[3]   See, e.g., In re

---

[3]      The text of Rule 9011 provides in pertinent part that:

(a) Signature.  Every petition, pleading, written motion, and other
paper, except a list, schedule, or statement, or amendments
thereto, shall be signed by at least one attorney of record in the
attorney's individual name.  A party who is not represented by an
attorney shall sign all papers.  Each paper shall state the signer's
address and telephone number, if any.  An unsigned paper shall be
stricken unless the omission of the signature is corrected promptly
after being called to the attention of the attorney or party.

(b) Representations to the Court.  By presenting to the court
(whether by signing, filing, submitting, or later advocating) a
petition, pleading, written motion, or other paper, an attorney or
unrepresented party is certifying that to the best of the person's
knowledge, information, and belief, formed after an inquiry
reasonable under the circumstances,-

        (1) it is not being presented for any improper purpose, such
as to harass or to cause unnecessary delay or needless increase in
the cost of litigation;

        (2) the claims, defenses, and other legal contentions therein
are warranted by existing law or by a nonfrivolous argument for
the extension, modification, or reversal of existing law or the
establishment of new law;

        (3) the allegations and other factual contentions have
evidentiary support or, if specifically so identified, are likely to have
evidentiary support after a reasonable opportunity for further
investigation or discovery; and

        (4) the denials of factual contentions are warranted on the
evidence or, if specifically so identified, are reasonably based on a
lack of information or belief.


Fed.R.Bankr.P. 9011(a) & (b).

DeVille, 361 F.3d 539, 548-50 (9th Cir. 2004) (debtor and counsel fined for

improper notice of removal); In re Silberkraus, 336 F.3d 864 (9th Cir. 2003)

(sanctions imposed for bad faith filing of Chapter 11 petition); In re Blagg, 43

Fed.Appx. 266 (10th Cir. 2002) (sanctions imposed for filing in wrong venue).  A

Rule 9011 sanction may consist of, or include:

> directives of a nonmonetary nature, or an order to pay a penalty into
> court, or, if imposed on motion and warranted for effective
> deterrence, an order directing payment to the movant of some or all
> of the reasonable attorneys' fees and other expenses incurred as a
> direct result of the violation.

Fed.R.Bankr.P. 9011(c)(2).[4]


The request for sanctions must be by motion, and the motion must

describe the specific conduct alleged to have violated Rule 9011.  See

Fed.R.Bankr.P. 9011(c)(1)(A); In re Baumblit, 251 B.R. 442, 443 (E.D.N.Y. 2000),

---

[4]     Subsection (c) of the Rule authorizes a court to impose sanctions,
and provides in pertinent part:

> (c) Sanctions.  If, after notice a reasonable opportunity to respond,
> the court determines that subdivision (b) has been violated, the
> court may, subject to the conditions stated below, impose an
> appropriate sanction upon the attorneys, law firms, or parties that
> have violated subdivision (b) or are responsible for the violations.

Fed.R.Bankr.P. 9011(c)(emphasis added).  Pursuant to the 1997 amendment, a
bankruptcy court has discretion in determining whether or not to impose
sanctions.

aff'd, 15 Fed.Appx. 30 (2d Cir. 2001).  The party subject to the motion for sanctions must receive notice that 9011 sanctions are being considered, the reason for the sanctions and the forms of sanctions being considered.  See DeVille, 361 F.3d at 549 (requiring particularized notice); In re Davis, 246 B.R. 646, 656 (10th Cir. BAP 2000), aff'd in part, vacated and remanded in part, 35 Fed.Appx. 826 (10th Cir. 2002) ("A party that is the target of a sanctions request has a due process right to 'notice that such sanctions are being considered by the court and a subsequent opportunity to respond' before final judgment.").  The request for sanctions must also come from a separate motion (apart from the motion to dismiss or a motion for summary judgment) seeking that relief, and it can only be filed after the expiration of the "safe harbor" period of 21 days following the date of the service of the motion (on the plaintiff), to allow her the opportunity to withdraw or correct the improper document.  Rule 9011(c)(1)(A).[5] The "safe harbor" provision is mandatory, and motions made in violation of the "safe harbor" will not be heard.  In re DeVille, 361 F.3d 539, 545 (9th Cir. 2004).

    In this case, we do not have compliance by the movant with the safe harbor

---

[5]    Rule 9011(c)(1) provides in relevant part that "[t]he motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."

rule.[6]  There is no indication in the record that the debtor's motion for 9011

sanctions was first served upon the plaintiff at least 21 days prior to its filing

with the court.  Considering that the request for sanctions was first raised at the

September 6, 2006 hearing and the motion papers were filed with the court on

September 20, 2006, only two weeks later, it is clear that the 21 day period

contained within the safe harbor rule was not followed.  Because the safe harbor

rule is a mandatory provision, the court cannot award sanctions under Rule 9011

on the debtor's motion.


     Sanctions under Rule 9011 on the court's own motion are also not

available.  Rule 9011 allows the court to sanction parties on its own motion

provided that an order to show cause has first been entered, describing the

specific conduct that appears to violate the rule, and directing that the attorney

or party show cause why he or she has not violated the rule.  The "safe harbor"

provision does not apply to the court's order to show cause.  Moreover,

"[m]onetary sanctions may not be awarded on the court's initiative unless the

---

     [6]     Although the Third Circuit has not explicitly ruled on when a
motion for 9011 sanctions must be brought, the Circuit has held that all Rule
11 motions must be filed before the entry of a final judgment.  Mary Ann
Pensiero, Inc. v. Lingle, 847 F.2d 90, 100 (3d Cir. 1988).  The rationale for Rule
9011 motions is the same as for Rule 11 sanctions -- there is no good reason to
wait until the litigation is completed before filing a Rule 9011 motion.  Raymark
Industries, Inc. v. Baron, No. CIV. 96-7625, 1997 WL 359333, *9 (E.D.Pa  June
23, 1997).

court issues its order to show cause before a voluntary dismissal or settlement of
the claims made by or against the party which is, or whose attorneys are, to be
sanctioned." Fed.R.Bankr.P. 9011(c)(2)(B). Here, no such order to show cause
was ever entered in this case. Accordingly, sua sponte sanctions under 9011 are
not appropriate.

Beyond Rule 9011, the statute most commonly invoked to support the
statutory authority of the bankruptcy court to sanction parties is 11 U.S.C. §
105. Section 105 is not an appropriate mechanism in this case. Under Section
105, the bankruptcy court "may issue any order, process, or judgment that is
necessary or appropriate to carry out the provisions" of Title 11. 11 U.S.C. § 105.
The court is authorized, sua sponte, to "tak[e] any action or mak[e] any
determination necessary or appropriate to enforce or implement court orders or
rules, or to prevent an abuse of process." Id.

It is well established that under 11 U.S.C. § 105, a bankruptcy court has
broad powers to implement the provisions of Title 11 and to prevent abuse of the
bankruptcy process. In re Volpert, 110 F.3d 494, 500 (7th Cir. 1997). The
provision authorizes the court to sanction attorneys for litigation abuses. Id.
Such orders are necessary "to protect the integrity of the Bankruptcy Code as
well as the judicial process," In re Arkansas Communities, Inc., 827 F.2d 1219,

1222 (8th Cir. 1987), and to enable bankruptcy courts "to maintain control of

their courtrooms and of their dockets." Volpert, 110 F.3d at 501.

The Section 105 power also encompasses the authority to conduct civil

contempt hearings.[7] In re Terrebonne Fuel and Lube, Inc., 108 F.3d 609 (5th Cir.

1997). Such proceedings are intended to coerce compliance with a court order,

or to compensate another party for the contemnor's violation. Id. at 612. In a

civil contempt proceeding, the focus of the court's inquiry is on whether the

---

[7]     Subsection (c) of section 105 references the jurisdictional and
procedural limitations of Title 28 upon the actions of district courts and
bankruptcy courts under Title 11. Under section 157(b) of Title 28, bankruptcy
courts are authorized to hear, determine and enter final judgments in all core
proceedings arising under Title 11. Civil contempt proceedings arising out of
core matters are themselves core proceedings. In re Skinner, 917 F.2d 444,
448 (10th Cir. 1990). Therefore, there is no Title 28 impediment to civil
contempt proceedings in bankruptcy court. Under Fed.R.Bankr.P. 9020, a
motion for an order of contempt is governed by Rule 9014.

As to criminal contempt proceedings, such proceedings are punitive in
nature, and are imposed for the purpose of vindicating the authority to the
court. In re Power Recovery Systems, Inc., 950 F.2d 798, 802 n.18 (1st Cir.
1991). Most courts have determined that bankruptcy courts do not have
criminal contempt powers, at least as to contempts not committed in their
presence. See, e.g., In re Hipp, Inc., 895 F.2d 1503 (5th Cir. 1990) (Where a
criminal contempt proceeding is required, the hearing and determination must
be before and by the district court.) In Hipp, the Fifth Circuit explained that a
criminal contempt prosecution does not arise from the bankruptcy case, but is
commenced as a separate and independent proceeding under 18 U.S.C. § 401,
the provision of the Criminal Code that empowers federal courts to punish
certain acts of contempt of the court's authority. Id. at 1518. See also In re
Magwood, 785 F.2d 1077 (D.C. Cir. 1986); In re Armstrong, 304 B.R. 432 (10th
Cir. BAP, 2004) (local district court rule requires indirect criminal contempt
matters to be heard and resolved by the district court).

attorney or party willfully violated a court order.  A showing of bad faith on the part of the contemnor is not required.  In re Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996).

Here, we do not have a violation of a court order or a need to compel compliance with a court order or bankruptcy policy.  A contempt proceeding, civil or criminal, is not appropriate in this instance.[8]

Having concluded herein that neither Rule 9011 nor Section 105 of the Bankruptcy Code may be applied here to sanction the plaintiff, I turn to the issue of whether the plaintiff's actions are sanctionable under the inherent power of the court.  The inherent authority of the federal courts to impose fee-based sanctions upon attorneys and parties for bad faith litigation conduct was recognized by the United States Supreme Court in Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991).

---

[8]      Another available sanctioning tool is 28 U.S.C. § 1927, which authorizes sanctions against an attorney "who . . . multiplies the proceedings in any case unreasonably and vexatiously."  Various courts have debated the availability of the section in bankruptcy courts.  Compare In re Volpert, 110 F.3d 494, 498 (7th Cir. 1997) (a bankruptcy court is not a "court of the United States" under section 1927) and In re Cohoes Indus. Terminal, Inc., 931 F.2d 222, 230 (2d Cir. 1991)(a bankruptcy court may impose sanctions under section 1927).  We need not resolve the dispute here, because the movant seeks sanctions against the plaintiff only, and not the plaintiff's attorney.

-17-

In <u>Chambers</u>, the Supreme Court observed that "[i]t has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution', powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" <u>Id</u>. at 43, 111 S. Ct. at 2132  (citation omitted).  According to the Court, "[t]hese powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" <u>Id</u>. (citation omitted).  Rules or statutes governing sanctions, like Fed.R.Civ.P. 11 and 27 U.S.C. § 1927, are not substitutes for the court's inherent authority to sanction, and the availability of those specific sanction opportunities does not foreclose a court's invocation of its inherent sanctioning authority.  <u>Id</u>. at 46, 111 S. Ct. at 2134.  In utilizing its inherent powers,

> [a] court must, of course, exercise caution . . ., and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.  Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.  But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

<u>Id</u>. at 50, 111 S. Ct. at 2136 (internal citation omitted).  "In <u>Chambers</u>, the Court left no question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or

-18-

disrupting litigation, or has taken actions in the litigation for an improper

purpose." <u>Fink v. Gomez</u>, 239 F.3d 989, 992 (9th Cir. 2001).  "[S]anctions are

justified when a party acts for an improper purpose--even if the act consists of

making a truthful statement or a non-frivolous argument or objection," where the

intent constitutes a willful abuse of the judicial process.  <u>Id</u>.


"Civil contempt authority allows a court to remedy a violation of a specific

order (including 'automatic' orders, such as the automatic stay or discharge

injunction).  The inherent sanction authority allows a bankruptcy court to deter

and provide compensation for a broad range of improper litigation tactics."  <u>In re</u>

<u>Dyer</u>, 322 F.3d 1178, 1196 (9th Cir. 2003).

> The inherent sanction authority differs from the civil contempt
> authority in an additional respect as well.  Before imposing sanctions
> under its inherent sanctioning authority, a court must make an
> explicit finding of bad faith or willful misconduct.  In this context,
> "willful misconduct" carries a different meaning than the meaning
> employed in the context of determining whether an individual is
> entitled to damages under § 362(h) or a contempt judgment under §
> 105(a) for an automatic stay violation.  With regard to the inherent
> sanction authority, bad faith or willful misconduct consists of
> something more egregious than mere negligence or recklessness.
> Although "specific intent to violate the automatic stay" may not be
> required in the contempt context, such specific intent or other
> conduct in "bad faith or conduct tantamount to bad faith," is
> necessary to impose sanctions under the bankruptcy court's inherent
> power.

<u>Id</u>. (citations omitted).

Most courts have agreed that bankruptcy courts, like Article III courts,
have the inherent power to impose sanctions for improper conduct that is abusive
to the judicial system.  See, e.g., In re Dyer, 322 F.3d 1178, 1196 (9th Cir. 2003)
(The inherent sanction authority allows a bankruptcy court to deter and provide
compensation for a broad range of improper litigation tactics.); In re Rimsat, Ltd.,
212 F.3d 1039, 1048-49 (7th Cir. 2000) (a bankruptcy court is not required to
apply available statutes and procedural rules in a piecemeal  fashion where only
a broader source of authority is adequate to justify all the necessary sanctions.);
In re Downs, 103 F.3d 472, 477 (6th Cir. 1996) (Attorney's failure to disclose
compensation arrangements under Fed.R.Bankr.P. 2016 warrants the exercise of
the bankruptcy court's inherent authority to sanction.).  See also Jove
Engineering, Inc. v. I.R.S., 92 F.3d 1539, 1553 (11th Cir. 1996) ("The Supreme
Court made clear that these inherent powers arise independently of any statute
or rule."); In re Rainbow Magazine, Inc., 77 F.3d 278, 284 (9th Cir. 1996) ("There
can be little doubt that bankruptcy courts have the inherent power to sanction
vexatious conduct presented before the court."); Fellheimer, Eichen & Braverman,
P.C. v. Charter Techologies, Inc., 57 F.3d 1215, 1224 (3d Cir. 1995) ("Among the
implied and 'incidental' powers of a federal court is the power 'to discipline
attorneys who appear before it.'"); In re Courtesy Inns, Ltd., Inc., 40 F.3d 1084,
1089 (10th Cir. 1994) ("§ 105 [is] intended to imbue the bankruptcy courts with
the inherent power recognized by the Supreme Court in Chambers.").

Here, the problem with imposing sanctions against the plaintiff on this

record, based on the inherent power of the court to sanction under <u>Chambers</u>, is

that the motion as filed is presented as a Rule 9011 motion.  No mention is made

of the prospect that reliance might be placed by the court on the inherent

authority of the court to sanction the plaintiff.  As noted in <u>Fellheimer, Eichen &

Braverman, P.C. v. Charter Technologies, Inc.</u>, 57 F.3d 1215, 1225 (3d Cir. 1995)

notice of the precise sanctioning tool that the court intends to employ to impose a

sanction upon a party or an attorney, as well as an opportunity to be heard

regarding the precise sanctioning tool, must be afforded.  There is a difference

between sanctions imposed under Rule 9011, and sanctions imposed under the

court's inherent power.  Under Rule 9011, or Fed.R.Civ.P. 11, only a showing of

objectively unreasonable conduct is required.  <u>Id</u>.  In contrast, the invocation of a

federal court's inherent power to sanction requires a finding of subjective bad

faith.  <u>Id</u>.

I believe that it is imperative that the plaintiff be afforded notice that she is

charged with subjective bad faith in filing the second adversary complaint, and

that the source of sanctioning power under consideration, as a consequence of

the factual circumstances described above, is the inherent authority of the court

to sanction described in <u>Chambers</u>.  It is alleged by the debtor that the plaintiff

was "actually aware of, or had at least remained deliberately indifferent to, the

-21-

factual and legal baselessness of the complaint." Id. at 1226.  To afford the

plaintiff a final opportunity to respond meaningfully to the suggestion that the

inherent authority of the court to sanction for bad faith litigation may be invoked,

I will invite the plaintiff to make a final submission to the court in that regard.

The submission must be filed by January 3, 2007.  If desired, the debtor may

respond through January 12, 2007.  I will then issue a written decision resolving

the motion.

Dated:   December 6 , 2006

JUDITH H. WIZMUR
CHIEF U.S. BANKRUPTCY JUDGE